Amalio G. CHAVARRIA, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–738.

United States Court of Veterans Appeals.

Oct. 5, 1993.

Robert B. Weathers, Corpus Christi, TX, was on the pleadings, for appellant.

James A. Endicott, Jr., Gen. Counsel, Norman G. Cooper, Acting Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Amy S. Gordon, Washington, DC, were on the pleadings, for appellee.

Before FARLEY, MANKIN and HOLDAWAY, Judges.

MANKIN, Judge:

Appellant appeals a February 14, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which determined that there was no new and material evidence presented to reopen his claim for entitlement to service connection for the residuals of a jaw injury and for hearing loss. This Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). Because appellant has not submitted new and material evidence since the BVA's final disallowance of his claim in January 1975, this Court will affirm the February 1992 BVA decision.

## I. Facts

Appellant served on active duty in the United States Army from December 21, 1942, to November 13, 1945. On October 11, 1944, he was involved in an incident in which he sustained a comminuted compound fracture of the mandible symphysis area (the articulation of the jaw bone) and lost several of his teeth. His service medical records (SMRs) do not mention any hearing problems and his November 1945 discharge examination found his hearing to be normal. An investigative report of the October 1944 incident by Colonel Ulmont W. Holly found that appellant's injury resulted after he and a companion, Corporal Walter Brown, overpowered a guard and stole a truck that appellant subsequently drove into a ditch. The report found that appellant was under the influence of intoxi-

cants and that the incident was due to gross carelessness or negligence. In a sworn statement by appellant made on December 1, 1944, appellant admitted that he was behind the wheel of the truck when it swerved into the ditch and that he was "kind of drunk at the time all of this happened." He also added that he "had no business taking the truck." Appellant's commanding officer signed a certificate which asserted that the injuries appellant sustained on October 11, 1944, "were not incurred while engaged in the performance of a military duty." Further, the Chief of Surgical Service at the hospital where appellant was taken after the incident certified that the admitting officer found appellant to be "intoxicated due to alcohol" although no blood alcohol test was taken.

In November 1966, an administrative decision by the Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) regarding the October 1944 incident found that the appellant was drinking, driving recklessly, and acting with disregard for his own safety. Further, the RO concluded that appellant was involved in willful misconduct and that his injuries were not incurred in the line of duty.

In August 1973, appellant filed an Application for Compensation or Pension for broken right and left jaws, deafness of the left ear, and the loss of teeth. In November 1973, the RO reviewed appellant's SMRs and denied entitlement to service connection for these disabilities. The RO concluded that appellant's broken jaw was the result of his own willful misconduct stemming from the October 1944 truck incident and that there was no evidence that appellant's alleged deafness was service connected since his hearing was normal on his discharge examination.

In January 1975, the BVA affirmed the denial of appellant's claim for entitlement to service connection for the residuals of a broken jaw and defective hearing. In July 1976, appellant submitted a statement alleging that he was coerced by the Military Police to plead guilty to the charges emanating from the October 1944 incident, and

that it was his companion who stole the truck and ordered appellant to drive it. In May 1977, appellant took a polygraph test in which he averred that he did not know how to drive when he steered the truck into a ditch on October 11, 1944. A sworn statement from appellant's sister dated August 1976 was submitted which stated that appellant does not currently know how to drive, nor did he know how to drive when he entered the Army in 1942. Appellant also submitted a letter from his dentist, Dr. E.C. Spellman, dated May 1978, which described appellant's missing teeth and noted that he was told by appellant that they were lost during World War II.

After appellant submitted these records, reports, and statements to reopen his claim, he was informed by letter in December 1978 that these documents did not constitute new and material evidence. In December 1989, appellant submitted a letter from Dr. Antonio Andrade, dated November 16, 1989, which stated that appellant was deaf in his left ear and that this condition "seems to be related to [an] accident while in the service." Another dentist, Dr. Selso Martinez, also submitted a letter in December 1989 which again described appellant's missing teeth and stated that "patient say [sic] teeth were lost in military service years." In January 1990, the RO issued a confirmed rating decision denying appellant service connection for the residuals of his jaw injury and his loss of hearing, stating that he had failed to submit new and material evidence to reopen his claim.

In July 1990, after appellant filed a Notice of Disagreement with the January 1990 rating decision, a hearing was held before a hearing officer where appellant stated that at the time of the October 1944 incident he had been drinking, but was not drunk. At the hearing, appellant also submitted a statement written by himself which chronologically summarizes his years in the service. The hearing officer concluded that the testimony and the additional evidence were cumulative in nature and did not "offset the previous determination that the accident was due to the veter-

an's own willful misconduct and not in the line of duty."

On February 14, 1992, the BVA issued its decision which is the subject of the instant appeal. The BVA determined that appellant had failed to submit new and material evidence to reopen his claim to establish that the injuries he sustained in the October 1944 incident were in the line of duty and not the result of his own willful misconduct or that his hearing loss was service connected. *Amalio G. Chavarria,* BVA 92–3119, at 2 (Feb. 14, 1992).

## II. Analysis

█ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. To reopen previously and finally disallowed claims, the BVA must conduct a two-step analysis. *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, the Board must determine whether the evidence presented or secured since the prior disallowance of the claim is "new and material." Second, if the evidence is new and material, then the case is reopened and the Board must evaluate appellant's claim in light of *all* the evidence, both new and old. *Id.*

█ The determination as to whether evidence is "new and material" is a question of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992). This Court's most recent statement of the law provides that:

> "New" evidence is that which is not merely cumulative of other evidence of record. "Material" evidence is that which is relevant to and probative of the issue at hand and which ... must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome.

*Cox v. Brown,* 5 Vet.App. 95, 98 (1993).

The evidence submitted subsequent to the January 1975 BVA decision consists of:

(1) a letter written by appellant in July 1976; (2) a sworn statement from appellant's sister dated August 1976; (3) a polygraph examination given to appellant in May 1977; (4) a letter from appellant's dentist, Dr. Spellman, dated May 1978; (5) a letter from Dr. Andrade dated November 1989; (6) a letter from another dentist, Dr. Martinez, submitted in December 1989; (7) hearing testimony given before a hearing officer in the July 1990; and (8) a written statement by appellant submitted at the July 1990 hearing.

█ Service connection may be granted for a disability resulting from disease or injury incurred or aggravated in the line of duty, but no compensation may be paid for a disability resulting from the veteran's own willful misconduct. 38 U.S.C.A. §§ 1110, 1112 (West 1991); 38 C.F.R. §§ 3.1(m), (n), 3.301 (1992). Thus, while items (1)–(8) may be considered "new" evidence because they are not cumulative of facts previously before the Board when it made its January 1975 decision, none of these items is "material." In order to be material, these items must be relevant to and probative of whether the October 1944 incident was a result of appellant's willful misconduct. Unless appellant's new evidence can show that he was acting within the line of duty, he is not entitled to service connection for any of the injuries he may have suffered as a result of the incident.

Both an investigative report issued in December 1944 and an administrative decision by the VA issued in November 1966 concluded that appellant engaged in willful misconduct and that his injuries were not incurred in the line of duty. Therefore, the fact that appellant's companion may have been the one who initially took the truck, the exact degree of appellant's intoxication, his knowledge of driving, and the alleged coercion he was under to plead guilty, are all irrelevant to the issue at hand—whether the incident was a result of his own willful misconduct. Thus, items (1), (2), (3), and (7) are not material. Items (1), (3), and (7) consist of a written statement, a polygraph examination, and hearing testimony, all by appellant, which do not deny that he was

driving the vehicle when it ran into a ditch, but merely give repetitive explanations for his behavior. Since these explanations are not relevant to or probative of the issue of whether he was engaged in willful misconduct which caused his injuries, they are immaterial to his claim for service connection. Similarly, item (2), the statement made by appellant's sister which reports that appellant has never learned how to drive, is hardly relevant to the fact that appellant was indeed driving the truck on the night of the incident and that it was his driving that caused the accident. Despite the evidence of extenuating circumstances that appellant has submitted, none of it tends to disprove the fact that he was engaged in willful misconduct at the time of the incident and that, in so doing, he was not acting in the line of duty.

Items (4), (5), and (6) are letters from various doctors that attempt to connect appellant's current medical condition to the 1944 incident. Each of the letters is remarkably similar in that each reports that it was the appellant who told the physician that appellant's present condition was connected to his time in the service. However, appellant's own recitations of his medical history do not constitute new and material evidence sufficient to reopen his claim when this account has already been rejected by the VA. *See Reonal v. Brown,* 5 Vet.App. 458, 461 (1993). In the instant case, the BVA in 1975 already rejected appellant's claim that the residuals of his jaw injury and his hearing loss were incurred in the line of duty. Accordingly, this medical evidence, based upon appellant's own recitations of his medical history which have been considered and rejected by the BVA, is not probative of the central issue of whether the veteran's willful misconduct caused the incident. Thus, the doctors' statements are not "material."

Lastly, item (8) is simply a statement that summarizes appellant's years in service. It has absolutely no bearing on whether appellant's residuals of a jaw injury and his hearing loss were incurred or aggravated in the line of duty. Thus, while it is technically "new" evidence, it is in no way "material" to the issue at hand. *See Colvin v. Derwinski,* 1 Vet.App. 171 (1991).

### III. Conclusion

Upon careful consideration of the parties' briefs and review of the record on appeal, it is the holding of this Court that while new evidence was submitted regarding appellant's claim, none of it was material. Therefore, we find no basis to overturn the February 14, 1992, BVA decision. Accordingly, the decision of the Board is AFFIRMED.